RECEIVED
SEP 2 7 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CRIST BREW | CIVIL ACTION NO. 10-1215 |
| -vs- | JUDGE DRELL |
| WEYERHAEUSER NR CO. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a Motion for Summary Judgment by Weyerhaeuser NR Company ("Weyerhaeuser").[1] (Doc. 48). For the following reasons, the motion will be GRANTED.

I. **Procedural Background**

On July 30, 2010, Crist Brew ("Mr. Brew") filed a Complaint (Doc. 1) alleging Defendant violated Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000(e), *et seq.* and 1981 ("Title VII") and La. R.S. § 23:301, *et seq.* Specifically, Plaintiff, an African-American male, claims he was the subject of employment discrimination, harassment, retaliation, and constructive discharge in violation of the aforementioned statutes.

---

[1] Plaintiff's Complaint (Doc. 1) names Weyerhaeuser Company as the defendant. However, the Answer (Doc. 14) identifies the appropriate defendant to be Weyerhaeuser NR Company.

Mr. Brew began his employment with Weyerhaeuser on March 15, 1985 at Defendant's plant located in Natchitoches, Louisiana ("the Natchitoches plant").[2] Plaintiff was an hourly associate and held the position of "lead man" on the day shift. In January of 2009, Plaintiff was demoted to the position of a "line operator" for reasons which will be discussed *infra*. He filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 7, 2009 and "asserted that he was demoted and harassed because of his race, and that he was retaliated against for opposing discriminatory practices" and received a right to sue letter from the EEOC on May 24, 2010. (Doc. 1, ¶¶ 21 & 28). On May 21, 2009, the position of "lead man" (Plaintiff's previously held position) became available for the night shift, and Plaintiff had the highest scores of the three demoted "lead" men, thereby placing him next in line to receive the promotion. However, Mr. Brew believed the "lead man" for night shift "did not represent to [him] a return to his former position as lead man on day shift." (Doc. 1, ¶ 26). Plaintiff declined the promotion and voluntarily ended his employment with Defendant on May 29, 2009. Defendant filed the present motion (Doc. 48) which Plaintiff has opposed (Doc. 71). We have considered the facts in the record and the parties' arguments, and we are prepared to rule on the motion.

---

[2] Mr. Brew was initially hired by Trus Joist Corporation which was acquired by Weyerhaeuser in 2000.

II. <u>Law and Analysis</u>

    A.    Motion for Summary Judgment

    1.    *Summary Judgment Legal Standard*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, "the amended rule contains no substantive change to the standard." <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 675, 680, n.8 (5th Cir. 2011). Accordingly, we equate the word "issue" in the old language of Rule 56 with "dispute" in the amended version. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir. 1983). It is important to note the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

    2.    *Race Discrimination Claim*

A discrimination claim pursuant to Title VII may properly be considered on a motion for summary judgment. <u>See, e.g.</u>, <u>Okoye v. Univ. of Texas Houston Health Sci. Ctr.</u>, 245 F.3d 507 (5th Cir. 2001); <u>McCoy v. City of Shreveport</u>, 492 F.3d 551 (5th Cir. 2007). In order to succeed on its motion for summary judgment, Defendant must show there is no genuine dispute as to any material fact that Plaintiff cannot prove the

required elements of his discrimination claims. <u>McCoy</u>, 492 F.3d at 556.³ In order to establish a prima facie case for discrimination, Plaintiff must provide evidence that he:

    (1)    is a member of a protected class;

    (2)    was qualified for his position;

    (3)    was subject to an adverse employment action; and

    (4)    was replaced by someone outside the protected class, or, in the case of disparate treatment, show that others similarly situated were treated more favorably.

<u>Okoye</u>, 245 F.3d at 512–13 (internal quotations and citations omitted). The flagship Title VII case is <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). In <u>McDonnell Douglas</u>, the United States Supreme Court employed a framework which requires a plaintiff on summary judgment to prove his prima facie case before shifting the burden to the defendant to articulate a "legitimate, nondiscriminatory reason for the employment action." <u>Id.</u> at 802. This basic framework has been used extensively in the Fifth Circuit. <u>McInnis v. Alamo Community College Dist.</u>, 207 F.3d 276 (5th Cir. 2000).

However, shifting the burden to the defendant is triggered only by the plaintiff's ability to set forth a prima facie case for discrimination. For the following

---

³ Mr. Brew seeks relief under Title VII and the Louisiana Employment Discrimination Law, codified at La. R.S. § 23:301, *et seq.* (Doc. 1). The Fifth Circuit Court of Appeals has found the Louisiana state law anti-discrimination statute to be "'substantively similar' to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance." <u>McCoy</u>, 492 F.3d at 556, n.4 (quoting <u>Trahan v. Rally's Hamburgers, Inc.</u>, 696 So.2d 637, 641 (La. App. 1 Cir. 1997)). Following controlling jurisprudence, we "analyze the issues only under the applicable federal precedents" since "the outcome of [Mr. Brew's] statutory discrimination and retaliation claims will be the same under federal and state statutes." <u>Id.</u>

reasons, Plaintiff in the current matter has failed to meet the elements for his prima facie case, and we need not address the legal standards required of the defendant under the McDonnell Douglas framework.[4]

As to the specific elements, Mr. Brew is African-American and therefore a member of a protected class. Although he had received disciplinary "write-ups" (indicating instances of negative performance) prior to his termination, Weyerhaeuser has assumed (at least, for the purposes of the summary judgment motion) that Mr. Brew was qualified for his position. (Doc. 48 at p. 25). Plaintiff's adverse employment action was his demotion in January of 2009.

However, Mr. Brew is unable to show facts to support the fourth element of his prima facie case. The record does not reflect Plaintiff was "replaced" by anyone; therefore, he must show disparate treatment. Weyerhaeuser has presented the following undisputed facts: (1) ten "lead men" were evaluated during the plant-wide reduction in force;[5] (2) of those ten individuals, three were African-American and seven were Caucasian; (3) of the three demoted lead men, two were Caucasian and one (Plaintiff) was African-American. Clearly, Caucasians were not treated more

---

[4] Plaintiff's opposition (Doc. 71) primarily focuses on the "matrix system" Weyerhaeuser used to determine which individual "lead men" would be demoted. Because he is unable to establish a prima facie for discrimination, we need not address the details of Weyerhaeuser's asserted legitimate, non-discriminatory reason for Mr. Brew's adverse employment action. However, we note Plaintiff's purely false statement that "Plaintiff was subject to the Defendant's newly created system while other white employees were not required to participate in same." (Doc. 71-1, ¶ 9). Plaintiff lacks any evidence to support this statement or to support his theory that the matrix was discriminatory toward him on the basis of his race.

[5] Originally, there were eleven "lead men" to be evaluated and considered for a demotion, but one, Thurmond Lavespere, opted to take the voluntary severance offer and was not considered for the demotion.

favorably compared to Mr. Brew in the January 2009 "lead men" demotions, and Plaintiff has identified no <u>evidence</u> to the contrary, only his opinion. Because he is unable to establish a prima facie case for race discrimination for his termination under Title VII and Louisiana state law (see note 3 *supra*), Defendant is entitled to judgment as a matter of law and its motion for summary judgment will be **GRANTED** as to the race discrimination claim.

3. *Harassment Claim*

The Supreme Court has decided that "hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116, n.10 (2001). The Fifth Circuit has identified the following standard for evaluating claims based on such harassment:

(1) plaintiff is a member of a protected group;

(2) plaintiff was the victim of uninvited [racial] harassment;

(3) the harassment was based on [race];

(4) the harassment affected a term, condition, or privilege of [plaintiff's] employment;[6] and

---

[6] The Fifth Circuit has provided further guidance as to this element:
Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a workplace environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.
<u>Hernandez v. Yellow Transportation, Inc.</u>, 670 F.3d 644, 651 (5th Cir. 2012) (internal citations and quotations omitted).

      (5)    plaintiff's employer knew or should have known of the harassment and failed to take prompt remedial action.

Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005) (internal quotations and citations omitted).

As discussed above, Plaintiff is a member of a protected group. He alleges the following incidents as harassment based on his race: (1) June 18, 2008: disciplinary "write up" for having too much down time on the machine he was operating as lead man; (2) June 2008: excluded from CPR Safety Training class; (3) September 10, 2008: disciplinary "write up" for failure to turn on steam valve; (4) a racist "joke" told by Darryl Jackson, a maintenance supervisor, in the presence of Steve Story, the Natchitoches plant manager; (5) December 4, 2008: Mr. Story confronted Mr. Brew about a machine problem; (6) Randy Mitcham, one of Mr. Brew's former supervisors, made a comment about Mr. Brew being "old" (date not identified in record); (7) Mr. Mitcham whistled at Mr. Brew "like a dog" to get his attention (date not identified in record); (8) May 2009: Mr. Mitcham did not allow Mr. Brew to take a break on one occasion when Mr. Brew specifically asked to do so. For the following reasons, we determine these incidents do not, either individually or considered a whole, amount to racial harassment under controlling legal standards.

As discussed earlier, Mr. Brew filed his charge of discrimination with the EEOC on March 7, 2009. It is well settled that a "Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct." Hood v. Sears Roebuck and Co., 168 F.3d 231, 232 (5th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)).

7

Accordingly, the incidents of June 2008 (disciplinary write-up and exclusion from CPR training) are untimely.[7]

In his deposition, Mr. Brew testified his September 10, 2008 disciplinary write-up resulted from a problem with the steam valve of a machine which he was responsible for at the time. (Doc. 48, Exhibit C at pp. 58–60). Plaintiff admitted there was a problem with the machine at the time, and he provided no evidence that his race was a motivating factor in the write-up.

As to the fourth incident, Mr. Jackson specifically "joked" about "killing blacks" and used extremely inflammatory and racist language as reported in an anonymous letter to Weyerhaeuser administration and in Mr. Brew's deposition. (Doc. 48, Exhibit C at p. 73–74). Despite the extremely offensive nature of the "joke," Mr. Brew learned about the comment from "rumors in the plant" and he was not present when it was told nor was it directed at him. Id. We find the comment by Mr. Jackson was an isolated incident by an individual, and Weyerhaeuser took "prompt remedial action" when Mr. Story immediately warned and counseled Mr. Jackson and subsequently terminated him. (Doc. 48, Exhibit D at pp. 95–96). We do not presume that the comments, simply because they were not directed at Mr. Brew, had no impact on Plaintiff. However, the undisputed facts do not demonstrate a legally

---

[7] Even if Plaintiff were able to overcome the procedural defect relating to these particular instances, he has offered no evidence to support either instance occurred based on his race. In his deposition, Mr. Brew stated the disciplinary action on June 18, 2008 arose from "getting the press operating in a timely manner or something like that." (Doc. 48, Exhibit C at p. 56). There is no indication Plaintiff was reprimanded due to his race. Similarly, Plaintiff has not provided evidence that his name was intentionally excluded from CPR training or that such alleged exclusion was adverse to him. Id. at p. 207–08.

cognizable claim for racial harassment considering the circumstances as a whole, particularly Weyerhaeuser's action of terminating Mr. Jackson.

On December 4, 2008, Mr. Story approached Mr. Brew in the plant and asked him questions about how the machine was working. (Doc. 48, Exhibit C at pp. 91-95). In their depositions, neither Mr. Brew nor Mr. Story recounted anything intimidating or hostile about Mr. Story's questions to Mr. Brew (Doc. 48, Exhibit C at pp. 91-95 and Exhibit D at pp. 101-03). Mr. Brew then asked of Mr. Story: "Why are you picking on me? Is it because I'm black?" Id. Mr. Story requested Mr. Brew and his supervisor, Leonard Smith (an African-American male), to continue the discussion in Mr. Story's office. Id. Mr. Story and Mr. Smith questioned Mr. Brew about his ability to perform his job duties, and Mr. Brew later apologized for his comment to Mr. Story and said he was able to do his job. (Doc. 48, Exhibit D at p. 103). Mr. Brew testified he "felt like [Mr. Story] was harassing [him] and stuff." (Doc. 48, Exhibit C at p. 95). Other than Mr. Brew's conclusory allegations and feelings, there is no indication Mr. Story asked Mr. Brew about the machine's performance as a result of Mr. Brew's race. Mr. Brew admitted Mr. Story never said anything racially oriented to him. (Doc. 48, Exhibit C at p. 83). In any event, generally it is appropriate for a plant supervisor to question and even confront an employee about optimizing that employee's machine output.

Mr. Mitcham's alleged comment about Mr. Brew's being "old" is not actionable under Title VII, and Mr. Brew never filed a charge alleging age discrimination. The instance wherein Mr. Mitcham whistled at Mr. Brew "like a dog" might have been unwelcome to Plaintiff, but it does not create an abusive work environment. Mr. Brew

testified it was noisy on the floor of the plant, and Mr. Mitcham whistled at Mr. Brew to get his attention. (Doc. 48, Exhibit C at p. 213). There is no indication Mr. Mitcham's action was based on Plaintiff's race. Finally, Mr. Brew asserts Mr. Mitcham him denied his one request to take a break "at whatever time he got ready" since Mr. Brew had heard from a colleague that another employee, Pat Roe (Caucasian) had been allowed to take breaks whenever he wanted upon permission from Mr. Mitcham. (Doc. 48, Exhibit C at p. 212). A single denied request based on secondary information does rise to the level of an abusive or hostile work environment.

Mr. Brew is unable to prove a prima facie case for racial harassment based on the totality of the circumstances, and we find Defendant is entitled to judgment as a matter of law and its summary judgment will be **GRANTED** as to this claim.

4.  *Retaliation Claim*

In order to establish a prima facie case for retaliation, the plaintiff must provide evidence that:

(1) he was engaged in a protected activity;

(2) an adverse employment action occurred; and

(3) a causal link existed between the protected activity and the adverse action.

Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) (internal citations omitted). The Fifth Circuit determined an "employee has engaged in activity protected by Title VII if []he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title

10

VII." <u>Grimes v. Texas Dep't of Mental Health and Mental Retardation</u>, 102 F.3d 137, 140 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a) and <u>Long v. Eastfield College</u>, 88 F.3d 300, 304 (5th Cir. 1996))(emphasis added).

Under the strict language of the statute, Mr. Brew engaged in a protected activity by participating in the investigation of Mr. Story's alleged behavior at the Natchitoches plant in November of 2008. The catalyst for the investigation was an anonymous letter sent to the Weyerhaueser administration. A total of thirty-seven employees were interviewed by Dawn Leatherwood, a human resources manager for Weyerhaeuser. Weyerhaeuser commenced its planned reduction in force shortly after the investigation ended, and Mr. Brew was demoted within two months of having participated in the investigation. Plaintiff argues temporal proximity in support of finding a causal link between his protected activity and adverse employment action. However, the reduction in force at the Natchitoches plant (and the use of the new matrix system) was announced prior to the investigation. Without more, temporal proximity does not create the causal link required to satisfy the third element of a prima facie case for retaliation. Further, Plaintiff has not identified any evidence to support his claim that any of the decision makers who caused his demotion had knowledge that he participated in the investigation. Mr. Brew responded "yes" when asked if it was "just [his] guess" (without evidence) that there was some connection between his participation in the investigation and his demotion. (Doc. 48, Exhibit C at pp. 88–89). We find no genuine dispute of material fact as to Plaintiff's retaliation

claim. Accordingly, Defendant's motion for summary judgment will be **GRANTED** as to this claim.

     5.    <u>*Constructive Discharge Claim*</u>

Plaintiff appears to allege a constructive discharge claim in his Complaint. (Doc. 1, ¶ 26). On May 21, 2009, Mr. Brew was offered the opportunity to return to his position as a lead man, although this time on the night shift instead of day shift. Plaintiff asserts this "night shift lead man position did not represent to plaintiff a return to his former position." <u>Id.</u> Notwithstanding the fact that Plaintiff's voluntary termination occurred after his EEOC charge (which he failed to amend), we find the substance of this claim fails under the applicable legal standard. The Fifth Circuit frames the inquiry as follows: "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign," and, notably, "constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."<u>Haley v. Alliance Compressor LLC</u>, 391 F. 3d 644, 650 (5th Cir. 2004) (internal citations and quotations omitted). As discussed *supra*, Mr. Brew has failed to establish a viable claim for a hostile working environment. Defendant asserts (and Plaintiff has not offered any evidence to the contrary) Mr. Brew was offered the promotion to "lead man" night shift on May 21, 2009 because the position became available at that time. Plaintiff had the highest score of the three demoted lead men according to the January 2009 evaluations, thereby placing him next in line to receive the available promotion. Further, we find a reasonable person in Plaintiff's position would not have felt compelled to resign upon being offered a *promotion* to lead man

from his May 2009 position of operator. Defendant is entitled to judgment as a matter of law as to Mr. Brew's constructive discharge claim and the summary judgment motion will be **GRANTED** as to this claim.

III. <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED** and Plaintiff's claims are **DISMISSED with PREJUDICE**. Disposition will enter by a separate judgment signed on this date.

SIGNED on this 27th day of September, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE